UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

KEVIN WILLIAMS,

    Petitioner,

v.                                                                 Case No. 2:12-cv-00334
                                                               HON. GORDON J. QUIST

CATHERINE S. BAUMAN,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

    Petitioner Kevin Williams, filed this petition for writ of habeas corpus challenging his jury convictions of two counts of assault with intent to murder, and one count of unlawfully driving away an automobile (UDAA). Petitioner was sentenced as a fourth habitual offender to concurrent terms of 25 to 50 years imprisonment for each of the assault convictions and 3 to 15 years imprisonment for the UDAA conviction. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision.

    Petitioner asserts that:

    I. [Petitioner] was denied his Sixth Amendment right to counsel and a fair trial when his original lawyer "switched sides" and helped the prosecution convict him by arranging for another client to testify against him. The replacement lawyer was ineffective for not objecting.

    II. In this assault prosecution, the prosecution improperly presented evidence of [Petitioner] Kevin Williams' other assaultive acts without providing the notice required by MRE 404(b), and without a non-

propensity rationale for the evidence. Trial counsel was ineffective for not objecting.

III. Trial counsel was ineffective to [Petitioner] by allowing his due process right to a properly instructed jury be violated where the trial court failed to instruct on assault with intent to commit great bodily harm less than murder the necessarily included lesser offense of assault with intent to commit murder where the testimonies and evidence presented at trial did warrant the instruction even where the prosecution and trial counsel both requested it be read to the jury but failed to object to when it was not.

IV. Trial counsel was ineffective by failing to file outcome determinative motions for expert witnesses and investigating right wrist injury defense as requested for by the Petitioner concerning medical reports from civil case (1:06-cv-619) and Dr. Lynch's MRI report, and Dr. Smiy's medical reports of wrist damages that was available and given to trial counsel by the Petitioner before the time of trial but social security/disability boards medical team and Law Judge Elizabeth Johnson's notice of decision concerning further damages was still under review that would have proven Petitioner's inability to commit the crime.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district

court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This

presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner asserts four claims for ineffective assistance of council. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court recently has observed, while "'[s]urmounting *Strickland*'s high bar is never an easy task,' . . . [e]stablishing that a state court's application was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 1485 (2010)). Because the standards under both *Strickland* and § 2254(d) are highly deferential, "when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). In those circumstances, "[t]he question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Petitioner claims that his trial counsel was ineffective for failing to bring to the court's attention that Petitioner's former counsel in this case also represented a prosecution witness. The Michigan Court of Appeals rejected this claim explaining:

> On appeal defendant first argues that he was afforded ineffective assistance of counsel at trial when his trial counsel failed to bring to the court's attention that defendant's former counsel in this case also represented a prosecution witness. Defendant asserts that his trial counsel should have sought to exclude the witness's testimony and to disqualify the prosecutor's office. We disagree.
>
> Defendant raised this issue for the first time on appeal in a motion to remand for an evidentiary hearing under *People v. Ginther*, 390 Mich 436; 212 NW2d 922 (1973), which this Court denied. Therefore, no evidentiary hearing was held. Consequently, this Court's review of defendant's claim of ineffective assistance of counsel is limited to mistakes apparent on the record. *People v. Rodriguez*, 251 Mich App 10, 38; 650 NW2d 96 (2002); *People v. Hurst*, 205 Mich App 634, 641; 517 NW2d 858 (1994). To establish ineffective assistance of counsel, a defendant must show that (1) defense counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) that there is a reasonable probability that but for defense counsel's error at trial the result of the proceedings would have been different. *People v. Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001); *People v. Henry*, 239 Mich App 140, 145–146; 607 NW2d 767 (1999). That is, defendant must

first show that trial counsel's performance was "deficient," and then establish that this "deficient performance prejudiced the defense." *People v. Carbin*, 463 Mich 590, 599–600; 623 NW2d 884 (2001). Effective assistance of counsel is presumed. *People v. Effinger*, 212 Mich App 67, 69; 536 NW2d 809 (1995). Counsel is not ineffective for failing to assert a meritless legal position. *People v. Unger*, 278 Mich App 210, 242–243, 255, 256; 749 NW2d 272 (2008).

A lawyer acting with a conflict of interest denies a defendant the effective assistance of counsel by breaching "the duty of loyalty, perhaps the most basic of counsel's duties." *People v. Smith*, 456 Mich 543, 557; 581 NW2d 654 (1998), citing *Strickland v. Washington*, 466 U.S. 668, 692; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To establish that a lawyer's conflict of interest has violated his right to the effective assistance of counsel, and to presume prejudice arising from that conflict, a defendant must show that an actual conflict of interest adversely affected his lawyer's performance. *Smith*, 456 Mich at 557. Michigan Rule of Professional Responsibility (MRPC) 1.9(a) provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

As this Court has explained, "[a]n attorney does not necessarily breach his or her duty of loyalty and confidentiality to a former client by representing a new client whose interests are merely adverse to those of the former client. The attorney breaches his or her fiduciary duty to a former client only by undertaking representation of a client who has interests both adverse and substantially related to work the attorney performed for the former client." *Alpha Capital Mgt, Inc. v. Rentenbach*, 287 Mich App 589, 604; 792 NW2d 344 (2010).

Attorney Dale Blunier was originally appointed to represent defendant and he served as defendant's counsel during the initial stages of this case until April 30, 2009, when he was replaced by retained counsel, Sidney Tall. Meanwhile, Blunier also had been appointed to represent Bobby Cliett in an unrelated, separate and distinct criminal matter arising from a home invasion to which Cliett pleaded guilty. After Tall had replaced Blunier as defendant's counsel, and after Cliett had pleaded guilty to the separate charges against him but before Cliett was sentenced, Cliett wrote a letter to

Blunier advising that he had information regarding defendant's involvement in this case. Defendant and Cliett had been in jail at the same time. Blunier contacted the police, providing them with the letter he received from Cliett. Police then interviewed Cliett, who informed them that defendant had admitted that to stabbing Kirkland and Peters. In exchange for his "truthful testimony" against defendant, plaintiff agreed to provide Cliett with a favorable sentencing recommendation in his separate criminal proceeding.

The matters in which Blunier represented defendant and Cliett are distinct and unrelated. At the time Blunier's representation of each commenced, and at all times until Cliett advised Blunier that he had information detrimental to defendant, there was no actual or implied conflict of interest. Moreover, that Cliett obtained information detrimental to defendant during the course of Blunier's representation of Cliett was merely fortuitous; it could not have been expected and it was not related in any way to Blunier's representation of either party. Nor does defendant allege, or the record in any way support an inference, that Blunier provided Cliett with confidential information he received from defendant, or that Blunier used confidential information from defendant to aid Blunier in his representation of Cliett. Moreover, contrary to defendant's assertion, this is not a case where defense counsel "switched sides," as in *People v. Davenport*, 280 Mich App 464, 466–467; 760 NW2d 743 (2008), where the defendant's former counsel ended his representation of defendant to join the two-person prosecutor's office during the pendency of defendant's prosecution. Rather, here, counsel was appointed to represent two defendants in unrelated, separate and distinct criminal prosecutions, and, thereafter, as a result of the coincidental fact that the two parties were housed together in the local jail and one spoke to the other about his criminal case, one became a witness against another. We find that, under these circumstances, Blunier's representation of defendant and Cliett did not present an actual conflict of interest.

Certainly, Cliett's interest in obtaining a favorable recommendation from plaintiff at sentencing by testifying against defendant was adverse to defendant's interest in not having Cliett testify against him. However, to prevail on his assertion that Blunier had a conflict of interest, defendant must establish that the legal services Blunier provided to Cliett "were substantially related to the subjects of [Blunier's] former representation" of defendant. *Alpha Capital Mgt*, 287 Mich App at 604, 609. They were not. Blunier's legal services to Cliett consisted, generally, of representing Cliett in an unrelated criminal matter. Viewed narrowly, it could perhaps be said that

- 7 -

Blunier's representation of Cliett for the purpose of advising the prosecution that Cliett had information adverse to defendant was "substantially related to" Blunier's prior representation of defendant. However, even if we were to conclude that a conflict of interest arose at the moment that Blunier became aware that Cliett had information favorable to the prosecution in this case, defendant cannot establish that there is a reasonable probability that but for Tail's failure to raise the issue the outcome of defendant's trial would have been different. *Rodgers*, 248 Mich App at 714; *Henry*, 239 Mich App at 145–146. Defendant has not offered any authority establishing that the trial court would have, or that it should have, precluded Cliett's testimony at trial. There is no indication that Cliett's testimony was the result of or was improperly influenced by Blunier's previous representation of defendant. And, had the trial court disqualified Blunier from continued representation of Cliett, there is no indication that if represented by different counsel Cliett would have not testified or would have testified any differently at trial. Therefore, Tall cannot be deemed to have been ineffective for failing to move to exclude Cliett's testimony. *Unger*, 278 Mich App at 255.

Additionally, defendant has not offered any authority indicating that a motion to disqualify the prosecutor's office from the instant case would have been successful. As this Court explained in *Davenport*, 280 Mich App at 472, quoting *In re Osborne*, 459 Mich 360, 369–371; 589 NW2d 763 (1999), "our Supreme Court has held that, in order to disqualify an entire prosecutor's office, a court must consider 'the extent to which knowledge has been shared by the disqualified lawyer and the disqualified lawyer's role within the prosecutor's office.'" There is no indication whatsoever that Blunier shared any information obtained during his representation of defendant with the prosecutor's office and Blunier had no role within that office. Consequently, there would have been no basis for the trial court to disqualify the prosecutor's office from representing the people in this case. Thus, Tall cannot be deemed to have been ineffective for failing to move to disqualify the prosecutor's office from this case. *Unger*, 278 Mich App at 255.

Furthermore, considering the overwhelming evidence of his guilt, defendant cannot establish that the outcome of his trial would have been different but for counsel's failure to raise the conflict issue or move to disqualify the prosecutor's office. Even if Blunier had been disqualified from further representation of Cliett or Cliett's testimony had been excluded, there is no indication that defendant would have been acquitted. Kirkland and Peters each immediately and consistently identified defendant as their assailant and the testimony

> of other witnesses, including that of police officers describing the scene of the crime and the forensic evidence, tended to corroborate their version of events. Finally, both defendant's flight following the assault and threats he made in an attempt to dissuade Cliett from testifying against him demonstrate a consciousness of guilt. *People v. Smelley*, 485 Mich 1023, 1024; 776 NW2d 310 (2010); *People v. Sholl*, 453 Mich 730, 740; 556 NW2s 851 (1996); *Unger*, 278 Mich App at 226; *People v. Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). Thus, we conclude that defendant was not denied the effective assistance of counsel.

Michigan Court of Appeals decision at 1-3, (Docket #21-18).

Prejudice is presumed if counsel is shown to have been burdened by an actual conflict of interest. *Strickland v. Washington*, 466 U.S. 668, 692 (citing *Cuyler v. Sullivan*, 446 U.S. 335, 345-50 (1980)). Yet, even in the case of such a conflict of interest, "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Id.* (quoting *Sullivan*, 446 U.S. at 350). In order to demonstrate a conflict of interest a petitioner must "point to specific instances in the record that suggest an actual conflict or impairment of [their] interest." *Moss v. United States*, 323 F.3d 445, 455, 459 (6th Cir. 2003) (citing *Thomas v. Foltz*, 818 F.2d 476, 481). Petitioner must also "make a factual showing of inconsistent interests and demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." *Id.*

Petitioner fails to demonstrate that a conflict of interest existed. Petitioner does not allege that Blunier shared privileged communications with the prosecution; that Blunier's representation of Cliett was anything other than coincidental; or that Cliett's testimony was the result of, or was improperly influenced by, Blunier's previous representation of defendant. Furthermore, Petitioner fails to show how Blunier's performance was affected by representing Cliett. Lacking a

conflict of interest, Attorney Tall would have no reason to object to Cliett's testimony, and a counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004). In the opinion of the undersigned, Petitioner has failed to show that the Michigan Court of Appeals' decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or was based upon an unreasonable determination of the facts in light of the evidence present in the state court proceeding.

Petitioner claims that he was afforded ineffective assistance of counsel at trial when Tall failed to object to testimony regarding threats Petitioner made to Cliett and others while he was being held in the local jail. The Michigan Court of Appeals rejected this claim explaining:

> Defendant also argues that he was denied the effective assistance of counsel at trial when Tall failed to object to testimony regarding threats defendant made to Cliett and others while he was being held in the local jail. We disagree.
>
> MRE 404(b)(1) prohibits the admission of evidence of a defendant's other acts or crimes when introduced solely for the purpose of showing that defendant acted in conformity with his criminal character. *People v. Sabin (After Remand),* 463 Mich 43, 56; 614 NW2d 888 (2000). However, such evidence may be admissible for non-character purposes under MRE 404(b)(1), which provides:
>
> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.
>
> To be admissible under MRE 404(b), other-acts evidence: (1) must be offered for a proper purpose, (2) must be relevant, and (3) must not

have a probative value substantially outweighed by its potential for unfair prejudice. *People v. Knox,* 469 Mich 502, 509; 674 NW2d 366 (2004); *People v. Steele,* 283 Mich App 472, 479; 769 NW2d 256 (2009). A proper purpose is one other than establishing the defendant's character to show his propensity to commit the charged offense. *People v. VanderVliet,* 444 Mich 52, 74; 508 NW2d 114 (1993), mod 445 Mich 1205 (1994); *People v. Johnigan,* 265 Mich App 463, 465; 696 NW2d 724 (2005).

Evidence is not subject to MRE 404(b) analysis merely because it discloses a bad act. If the other-acts evidence is "in any way relevant to a fact in issue," and "does not involve the intermediate inference of character," it is admissible as substantive evidence without regard to MRE 404(b). *VanderVliet,* 444 Mich at 64. It is well-settled that a defendant's attempt to dissuade a witness from testifying against him is generally admissible as substantive evidence because it relates directly to the defendant's consciousness of guilt. *Sholl,* 453 Mich at 740; *Mock,* 108 Mich App at 389. Consequently, Cliett's testimony that defendant threatened to harm him if he testified against defendant was admissible as substantive evidence against defendant. And, testimony from corrections officer Mike Bradley that defendant was moved to a different cell block because of his threatening behavior toward other inmates and jail staff was admissible to rebut defendant's testimony that he did not make such threats and to corroborate Cliett's testimony. Accordingly, counsel was not ineffective for failing to object to this testimony. *Unger,* 278 Mich App at 256.

Additionally, a defendant's testimony can open the door to responsive cross-examination, and defense counsel's questioning of a witness can likewise permit the introduction of responsive testimony without implicating MRE 404(b). See *People v. Lukity,* 460 Mich 484, 498–499; 596 NW2d 607 (1999); see also *People v. Brown,* 279 Mich.App 116, 135; 755 NW2d 664 (2008) ("A prosecutor may fairly respond to an issue raised by the defendant."); *People v. Allen,* 201 Mich App 98, 103; 505 NW2d 869 (1993) (when a defendant raises an issue, he opens the door to a full, and not just selective, development of that issue). The defense attempted to establish during its cross-examination of Cliett that Cliett was testifying falsely in order to obtain a favorable sentencing recommendation from the prosecution. Cliett's testimony that he feared for his life as the result of defendant's threats was responsive to this assertion. Further, Bradley's testimony that defendant made numerous threats to other inmates and jail staff was admissible to corroborate Cliett's

> testimony, as well as to directly rebut defendant's testimony that he had not threatened any other inmates.
>
> While generally a prosecutor must provide reasonable notice of his intent to present other-acts evidence, MRE 404(b)(2), this requirement does not apply to evidence introduced to rebut the defendant's evidence. *Lukity,* 460 Mich at 499–500; *People v. McRunels,* 237 Mich App 168, 183; 603 NW2d 95 (1999). Accordingly, no notice was required here. *Id.*
>
> Finally, even were we to conclude that the evidence of defendant's threats was inadmissible and that counsel was deficient for failing to object to it, considering the overwhelming evidence of his guilt defendant has not established that the outcome of his trial would have been different absent this evidence. As we previously observed, Kirkland and Peters each immediately and consistently identified defendant as their assailant, and the testimony of other witnesses, including that of police officers describing the scene of the crime and the forensic evidence, tended to corroborate their version of events. Moreover, defendant's flight following the assault demonstrated his consciousness of guilt. *Smelley,* 485 Mich at 1024; *Unger,* 278 Mich App at 226; *Coleman,* 210 Mich App at 4. Consequently, we conclude that defendant was not denied effective assistance of counsel at trial by counsel's failure to object to evidence regarding defendant's threatening behavior while in jail. Reversal of defendant's convictions is unwarranted.

Michigan Court of Appeals decision at 4-5, (Docket #21-18).

The United States Supreme Court has consistently held that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Due to this well established precedent, this Court may not review the Michigan Court of Appeals' findings that prosecutorial misconduct did not occur. Therefore, an objection to testimony regarding threats Petitioner made to Cliett and others while he was being held in jail would be meritless, and failing to make a meritless objection does not constitute ineffective assistance of counsel. *See Smith v.*

*Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004). In the opinion of the undersigned, Petitioner has failed to show that the Michigan Court of Appeals' decision on this issue was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or was based upon an unreasonable determination of the facts in light of the evidence present in the state court proceeding.

Petitioner claims that trial counsel provided ineffective assistance by failing to correct the trial court's improper jury instructions. The trial court rejected this claim explaining:

> As an initial matter, this Court is precluded by the Court Rules from granting relief to Williams for ineffective assistance. On a motion for relief from judgment, this Court may not grant relief to a defendant whose motion alleges grounds for relief that were decided against him in a prior appeal, unless he establishes a retroactive change in the applicable law. Defendant has failed to establish such a change.
>
> Even assessing the merits of his arguments, however, there was no ineffective assistance of counsel here. The standard for proving ineffective counsel is the same under the Michigan Constitution as it is under the United States Constitution: a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced him as to deprive him of a fair trial. To demonstrate prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the jury would have had a reasonable doubt regarding his guilt.
>
> Defendant's first claim is that his counsel was ineffective for not requesting a jury instruction on Assault with Intent to Commit Great Bodily Harm, a necessarily lesser-included offense of Assault with Intent to Murder. A requested instruction on a lesser-included offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser-included offense, and a rational view of the evidence would support giving the lesser-included instruction.
>
> Here, the only difference between Assault with Intent to Commit Great Bodily Harm and Assault with Intent to Murder is the required intent. This was not a disputed element at trial; Williams did not

- 13 -

> argue that he did not intend to kill the victims, but rather argued that he never touched the knife at all. Thus, there is no disputed factual element separating the two counts.
>
> Further, the evidence introduced at trial did not support the giving of a Great Bodily Harm instruction. Dr. Michael Sailers, who examined both victims, testified that Kirkland and Peters suffered life-threatening injuries that were very nearly fatal. Seemingly cognizant of this fact, the defense elected to pursue an "all or nothing" strategy and argue that Williams had never touched the knife at all. Counsel's choice to pursue this strategy was not objectively unreasonable.

(3/15/13 Cass Cir. Ct. Op. at 2-3 (footnotes omitted).)

Petitioner's assertion that trial counsel was ineffective cannot be based solely on the given jury instruction. The Sixth Circuit has held that the failure to instruct on a lessor included offense in a noncapital case is not "such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990); *see also Scott v Elo,* 302 F.3d 598, 606 (6th Cir. 2002). Instead, the Petitioner must overcome the presumption that the challenged action might be considered sound trial strategy. *See Strickland v. Washington*, 466 U.S. 668, 689 (1984) (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Additionally, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91; *see also Meeks v. Bergen*, 749 F.2d 322, 328 (6th Cir. 1984).

Trial counsel initially sought a jury instruction on the lesser-included offense. However, several months had passed between the time this request was made and the time the trial began. Without evidence showing that this decision was not based on strategy, or that counsel did not throughly investigate the applicable laws and facts, this Court must presume that trial counsel's

actions were reasonable. Moreover, Petitioner has failed to show prejudice. In the opinion of the undersigned, Petitioner has failed to show that the trial court's decision on this issue was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or was based upon an unreasonable determination of the facts in light of the evidence present in the state court proceeding.

Petitioner claims that trial counsel was ineffective when he failed to present evidence that a prior wrist injury would have prevented Petitioner from stabbing the victims with any force as a defense. In addition, Petitioner claims that trial counsel failed to file outcome determinative motions or a pretrial motion to quash the victims from testifying. Petitioner also claims that the failure to call medical experts and to object to erroneous jury instructions constituted ineffective assistance. In addressing the failure to raise a defense claim, the trial court stated:

> Trial counsel was likewise not ineffective for not pursuing the wrist-injury defense. Before trial, Williams told his attorney of a wrist injury that would supposedly have prevented him from stabbing the victims with any force. But this, too, was a matter of trial strategy. Defendant has not established that his counsel acted objectively unreasonable, and that the outcome of the trial would have been different had he acted differently.

(3/15/13 Cass Cir. Ct. Op. at 3.)

This issue is intertwined with Petitioner's second allegation, that trial council was deficient for failing to file an "outcome determinative motion" to adjourn trial until the administrative law judge issued an opinion on his social security case. Petitioner's social security case only addresses whether his injury resulted in an inability to maintain gainful employment in the areas in which he has training and experience. It does not address whether Petitioner possessed the physical means necessary to perform the acts for which he was convicted. Even a successful motion to adjourn would not provide the evidence needed to support a "wrist-injury defense," therefore it

is logical that trial counsel did not pursue this strategy. Furthermore, Petitioner states that he made counsel aware of available medical reports, but Petitioner does not allege that trial council did not review those reports, or throughly investigate the laws and facts relevant to a "wrist-injury defense." Amended Brief in Support of Petition for Writ of Habeas Corpus at 24-25, (Docket #45). Ultimately, Petitioner fails to provide evidence that trial council's performance was objectively unreasonable.

Petitioner's third contention is that trial counsel failed to quash the testimony of both victims. Petitioner points to the victims' inconsistent statements and physical evidence, but fails to assert a legal basis for trial counsel to move to exclude the victims' testimony or any of the physical evidence. Petitioner's argument is conclusory, and "conclusory allegations, without evidentiary support, do not provide a basis for habeas relief." *Prince v. Straub*, 78 F.Appx. 440, 442 (6th Cir. 2003).

Petitioner's fourth allegation is that his constitutional rights were violated when trial counsel failed to call expert witnesses. Other than Dr. Lynch, Petitioner fails to identify specific expert witnesses who should have been called to testify. Petitioner fails to offer any affidavits from proposed expert witnesses, including Dr. Lynch, regarding the manner in which they would have interpreted Petitioner's medical records, the content of their proposed trial testimony, or whether they would have testified that Petitioner was physically unable to have stabbed the victims. Petitioner's argument is conclusory, and therefore does not provide a basis for habeas relief. *See Prince*, 78 F. Appx. at 442.

Petitioner's fifth claim is that he is entitled to habeas relief on the basis of newly discovered evidence. In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court stated that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a

ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." However, the *Herrera* Court did not close the door completely, noting that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." *Id.* at 417.

Petitioner's case is not a capital case, thereby precluding newly discovered evidence as the sole basis for habeas relief. In the opinion of the undersigned, Petitioner has failed to show that the state trial court's decision on this matter was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Nor was the decision based upon an unreasonable determination of the facts in light of the evidence present in the state court proceeding.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court

in *Slack v. Mcdaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ TIMOTHY P. GREELEY
    TIMOTHY P. GREELEY
    UNITED STATES MAGISTRATE JUDGE

Dated: June 16, 2015